# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| BYRON SIMON, | : | |
| Plaintiff, | : | |
| | | Case No. 3:07CV081 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

Plaintiff Byron Simon has a number of health problems: diabetes mellitus, hernia, cataracts, and leg, knee, foot, and back pain. (Tr. 65). By the year 2000, his health problems prevented him from continuing to work for a temporary agency. On July 22, 2002, he sought financial assistance from the Social Security Administration by applying for supplemental security income (SSI).

After various administrative proceedings, Administrative Law Judge (ALJ) Daniel R. Shell denied Plaintiff's SSI application based on his conclusion that Plaintiff's impairments did not constitute a "disability" within the meaning of the Social Security

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

Act. (Tr. 31). ALJ Shell's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration. Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #8), Plaintiff's Reply (Doc. #9), the administrative record, and the record as a whole.

Plaintiff seeks reversal of the ALJ's decision, or at a minimum, a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II.     FACTUAL BACKGROUND

### A.     Plaintiff and His Testimony

On the date of the ALJ's decision (April 25, 2006), Plaintiff's age (49) placed him in the category of a "younger person" for purposes of resolving his SSI application. *See* 20 C.F.R. §404.1563(c); *see also* Doc #7 at 2. He has an eighth grade education and has worked various jobs including, most significantly, work as a plating laborer. *See* Tr. 317; *see also* Doc. #7 at 2.

Although Plaintiff's SSI application identified his claimed disability onset date as June 23, 1997, he can only obtain SSI beginning on July 22, 2002, the date he filed his SSI application. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230,

2

1233 (6th Cir. 1993); *see also* Tr. 23. Thus, the main issue presented to the Social Security Administration was whether Plaintiff was under a disability beginning on July 22, 2002 and continuing thereafter.

Plaintiff testified during the ALJ's hearing that he last worked on a full-time job in 1992. (Tr. 308). He worked some temporary, part-time jobs in 1995 and 1996. A work history report shows that he was also employed by a temporary agency until 2000. (Tr. 74).

When asked the ALJ why he could not work full-time, Plaintiff answered:

> Well, the reason why I cannot work a full-time job is due to my diabetes and I stay sick all the time and I hurt, my knees and my legs and toes and my hands and my back. And when I grip something to pick up something, most of the time, I drop it due to my hands....

(Tr.310). Plaintiff was first diagnosed with diabetes in September 2000. (Tr. 126, 310). He treats the diabetes with insulin. (Tr. 310). He also takes Neurontin, Flomax, and Cozaar. *Id*. He experiences side effects from these medications including constant fatigue and dizziness. (Tr. 313).

Plaintiff does not have a driver's license or a bank account. (Tr. 311-12). He does not read well, due to his poor eyesight and due to some problems comprehending certain things. (Tr. 312-13). He uses a cane all the time, as a physician has prescribed. (Tr. 312). He does not use public transportation because he cannot usually walk to the bus stop due to knee and back pain. (Tr. 313-14). He never goes shopping by himself. (Tr. 317). At the time of the ALJ's hearing, Plaintiff was 6 feet, 1 inch tall and weighed 247

pounds. (Tr. 312).

Plaintiff lives in a house with basement stairs. He is able to go down the stairs to do laundry but must rest before climbing back up the stairs. (Tr. 315). He does not sweep, does only a few dishes, and has difficulty showering and dressing. (Tr. 315-16). He cannot reach his feet, so his friends help him put on socks and shoes. (Tr. 316). He also has a friend who cooks and shops for him. He explains, "Well, she helps me do everything, really." (Tr. 316). Plaintiff explained that at one time he was able to do things like mow the grass and other chores around the house, but he is no longer able to do those things. Instead, his friend does these tasks for him. (Tr. 316).

### B. Medical Source Opinions

Plaintiff relies on the opinions of his treating physician, Wilbur R. Brooks, M.D., with whom he treated from 2000 to 2002. Dr. Brooks completed a Basic Medical form in July 2002. He diagnosed Plaintiff with diabetes mellitus, chronic low back pain, hyper-cholesterol, and chronic bilateral knee pain. (Tr. 136). Dr. Brooks' findings included decreased sensation in Plaintiff's first toe bilaterally, crepitus in both knees, medial/lateral joint space tenderness, and stiff movement and gait. (Tr. 136). Dr. Brooks opined that during an 8-hour workday, Plaintiff was limited to standing/walking for two hours total but not longer than fifteen minutes without interruption; he could sit for two hours during an 8-hour workday but not more than fifteen minutes without interruption. (Tr. 138). Dr. Brooks also believed that Plaintiff has marked limitation in bending; moderate limitation in pushing/pulling and repetitive foot movements; and the ability to lift and carry up to 5

4

pounds frequently (2/3 of an 8-hour workday).  *Id*.  Dr. Brooks checked boxes indicating his opinion that Plaintiff was unemployable and that his limitations would last between 30 days and 9 months.  (Tr. 138).

In October 2002, Amita Oza, M.D. examined Plaintiff for the Ohio Bureau of Disability Determinations (Ohio BDD).  (Tr. 166-72).  Dr. Oza concluded that Plaintiff had uncontrolled diabetes, symptoms suggestive of diabetic peripheral neuropathy, a history of hyperlipidemia, arthritis in his knee, mechanical low back pain, and poor vision probably due to his changing blood sugars.  Depression was under fair control.  (Tr. 167-68).

On November 2, 2002, Walter Holbrook, M.D., reviewed the record and completed a Residual Functional Capacity Assessment.  (Tr. 174-79).  Dr. Holbrook concluded that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently; he could stand and/or walk for 6 hours during an 8-hour workday; and he could sit for about 6 hours in an 8-hour workday.  (Tr. 175).  Dr. Holbrook based his opinions on Plaintiff's obesity, diabetes, low back pain, knee pain, limited range of spinal motion, mild limitation in range of knee motion.  (Tr. 175-76).  Dr. Holbrook also noted, "Sensory is intact in the lower extremities.  Reflexes could not be obtained.  The claimant is able to walk without ambulatory aids."  (Tr. 176).

On March 30, 2004, Damian Danopulos, M.D. examined Plaintiff for the Ohio BDD.  (Tr. 195-202).  At that time, Plaintiff weighed 322 pounds.  (Tr. 196).  Dr. Danopulos listed the following objective findings: "1) mature onset, insulin-dependent

5

poorly controlled diabetes with clinical evidence of considerable diabetic neuropathy; 2) morbid obesity; 3) early emphysema; and 4) depression...." (Tr. 198).  Dr. Danopulos summarized his opinions as follows:

> [Plaintiff's] ability to do any work-related activities is affected in a negative way very much due to diabetic neuropathy, which, together with his morbid obesity and his early emphysema are affecting his ability to do any work-related activities like standing, walking, lifting, and carrying.

(Tr. 198).

One week later, Jerry McCloud, M.D. reviewed the record for the Ohio BDD.  (Tr. 219-25).  Dr. McCloud opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; he could stand and/or walk 2-to-4 hours in an 8-hour workday; he could sit about 6 hours in an 8-hour workday.  (Tr. 220).  Dr. McCloud explained that Plaintiff is morbidly obese (BMI of 41.3);[2] his diabetes is uncontrolled; he has knee pain; he "is also showing early signs of emphysema with diminished chest excursions and prolonged expiration.  Otherwise clear lungs.  He smokes a pack a day for the last 20 year." (Tr. 220).  According to Dr. McCloud, Plaintiff "has a limping gait and uses a cane, which is not obligatory.  He reports to using it for the last 18 months." (Tr. 221).  Dr. McCloud reviewed the opinions of Plaintiff's doctor and found them inconsistent "with exam and other MER [medical evidence of record] in file...." (Tr. 223).  Dr. McCloud reiterated that Plaintiff can walk, stand, lift, and carry as noted in his

---

[2] BMI refers to body mass index, a quantitative measure of obesity.  *See* The Merck Manual at 60 (17th Ed. 1999).

6

assessment of Plaintiff's residual functional capacity. (Tr. 223).

In February 2005, Plaintiff's treating physician Barbara Akoto, M.D. opined that Plaintiff could lift up to 5 pounds frequently; he could stand and walk for a total of 1 hour during an 8-hour workday; he could sit for 4 hours during an 8-hour workday, no more than 2 hours at a time; he could never climb, balance, stoop, crouch, kneel, or crawl; and he was incapable of performing sedentary work on a sustained basis during an 8-hour day.[3] (Tr. 230-34).

### III. ADMINISTRATIVE REVIEW

#### A. "Disability" and the Sequential Evaluation Procedure

The Social Security Administration provides SSI to indigent individuals, subject to several eligibility requirements. Chief among these for purposes of this case is the "disability" requirement. To receive SSI, an applicant must be a "disabled individual." 42 U.S.C. §1381a; *see Bowen v. City of New York*, 476 U.S. 467, 470 (1986). The phrase "disabled individual" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity. 42 U.S.C. §1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

---

[3] Under the Regulations, "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §404.1567(a).

An SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992).

Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any Step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

**B.**     **The ALJ's Decision**

In the present case ALJ Shell found at Step 2 that Plaintiff had the following severe impairments: "diabetes mellitus with neuropathy, chronic lumbar strain, obesity,

mild chronic obstructive pulmonary disease, and degenerative joint disease of the right knee." (Tr. 30). The ALJ determined at Step 3 that "he does not have an impairment or combination of impairments listed in, or medically equal to one listed in...," the Commissioner's Listings. (Tr. 30).

At Step 4 the ALJ found that Plaintiff retained the Residual Functional Capacity for light work[4] with several limitations: "he cannot climb ladders, cannot work at heights, and must be permitted the opportunity to change his position at 30 to 45 minute intervals." (Tr. 30). The ALJ further concluded that Plaintiff could not perform his past relevant work. (Tr. 30).

The ALJ's assessment of Plaintiff's Residual Functional Capacity, along with the ALJ's findings throughout his sequential evaluation, led him to conclude that Plaintiff was not under a disability and thus not eligible to receive SSI. (Tr. 29-31).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision proceeds along two lines: whether substantial evidence in the administrative record supports the ALJ's factual findings and whether the ALJ "applied the correct legal criteria." *Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

"Substantial evidence is defined as 'such relevant evidence as a reasonable mind

---

[4] The Regulations define light work as involving the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "'more than a scintilla of evidence but less than a preponderance...*" *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review of the administrative record and the ALJ's decision is not *de novo*. *See Cutlip v. Secretary of Health and Human Servs.*, 25 F3d 284, 286 (6th Cir. 1994). And the required analysis is not driven by whether the Court agrees or disagrees with an ALJ's factual findings or by whether the administrative record contains evidence contrary to those findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld "as long as they are supported by substantial evidence." *Rogers*, 486 F.3d at 241 (citing *Her*, 203 F.3d at 389-90).

The second line of judicial inquiry – reviewing the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *See Bowen*, 478 F3d at 746. This occurs, for example, when the ALJ has failed to follow the Commissioner's "own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing in part *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir.2004)).

**V.   DISCUSSION**

    **A.   The Parties' Contentions**

Plaintiff asserts that the ALJ erred in two ways when rejecting his treating physician, Dr. Akoto's, opinions: (1) the ALJ's reasons for not applying controlling weight to Dr. Akoto's opinions under the treating physician rule were not supported by evidence; and (2) after the ALJ declined to place controlling weight on Dr. Akoto's opinions (under the treating physician rule), he erred by not continuing to weigh this physician's opinions under the remaining factors set by the Regulations. Plaintiff also contends that the ALJ erred by merely mentioning Dr. Brooks' opinions without providing good reasons for rejecting them. Plaintiff lastly contends that the ALJ erred by not weighing the opinions of one-time consultative examiner Dr. Danopulos, and the opinions of the state agency physicians.

The Commissioner contends that substantial evidence supports the ALJ's assessment of Plaintiff's Residual Functional Capacity. The Commissioner further contends that the ALJ did not err by placing little weight on Dr. Akoto's opinions because this physician's opinions were not well-supported by medically acceptable clinical and laboratory diagnostic techniques and because the opinions were not consistent with other substantial evidence of record. The Commissioner emphasizes that the limitations Dr. Akoto placed on Plaintiff's work ability were not supported by Dr. Akoto's treatment notes and the ALJ reasonably declined to adopt those limitations as unsupported by clinical findings.

As to Dr. Danopulos, the Commissioner points out that the ALJ considered his opinions, which were not necessarily inconsistent with the ALJ's assessment of Plaintiff's

11

Residual Functional Capacity. The Commissioner further points out that Dr. Danopulos did not provide opinions about specific limitations on Plaintiff's ability to do work activities. And, the Commissioner contends that the ALJ stated that he was placing significant weight on the opinions of the state agency physicians.

>    **B.** **Weighing Medical Source Opinions**

The treating physician rule, when applicable, requires ALJs to place controlling weight on a treating physician's opinion rather than favoring the opinion of a nonexamining medical advisor, or an examining physician who saw a claimant only once, or a medical advisor who testified before the ALJ. *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004); *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §416.927(d)(2), (e), (f). A treating physician's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §416.927(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R.

§404.1527(d)(2)).

In general, more weight is given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §416.927(d)(1). However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p. Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §416.927(d), (f).

**C.   Analysis**

The ALJ correctly set forth the standards applicable to evaluating a treating physician's opinion to determine controlling weight must be placed on Dr. Akoto's opinions under the treating physician rule. *See* Tr. 26. The ALJ then applied the correct legal criteria under the treating physician rule to Dr. Akoto's opinion by finding it "neither well-supported by medically-acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record." (Tr. 26); *see* 20 C.F.R. 416.927(d)(2).

The ALJ, however, erred by not continuing to weigh Dr. Akoto's opinions under the remaining factors of the Regulations. *See* Tr. 26-27. The ALJ did not explicitly

identify the continued-weighing requirement and did not frame his evaluation in terms sufficient to explain what regulatory factor led him to reject Dr. Akoto's opinions. In addition, if the ALJ's explanation could be read as applying the continue-weighing requirement, substantial evidence does not support his findings. The ALJ wrote, "Dr. Akoto's treatment notes generally parrot back the claimant's complaints and then comment on his non-compliance with his treating regimen." (Tr. 26). Yet a review of Dr. Akoto's treatment notes reveals the presence of more than mere parroting of Plaintiff's complaints. For example, on September 11, 2003, Dr. Akoto identified "[d]ecreased sensation to light lower extremities," a finding consistent with Plaintiff's report of "pain in the lower extremity neuropathic like in description...." (Tr. 255). The ALJ, moreover, overlooked or ignored that Dr. Danopulos – a consultative examiner for the Ohio BDD – recognized that Plaintiff had "diabetes with clinical evidence of neuropathy" and that Plaintiff's "ability to do any work-related activities is affected in a negative way very much due to diabetic neuropathy, which, together with his morbid obesity and his early emphysema are affecting his ability to do any work-related activities like standing , walking, lifting, and carrying." (Tr. 198)(emphasis added). This opinion tends to confirm Dr. Akoto's opinions about Plaintiff's very limited work abilities, and it was error for the ALJ not to address it when assessing whether Dr. Akoto's opinions were consistent with other substantial evidence of record. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."); *see also Switzer v. Heckler*, 742 F.2d 382,

14

385-86 (7th Cir. 1984); *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002).

The record contain other evidence supporting the opinions of Dr. Akoto and Dr. Danopulos. No physician has found deep tendon reflexes in Plaintiff's lower extremities. Dr. Danopulos, for example, found "[d]eep tendon reflexes were abolished." (Tr. 197). Similarly, a one-time examiner for the Ohio BDD, Dr. Oza, noted, "DTR [deep tendon reflexes] could not be obtained in the lower extremities." (Tr. 167). Dr. Elmi, an orthopedist, noted on examination that Plaintiff's "knee and ankle reflexes were both absent bilaterally." (Tr. 269). And a podiatrist who performed a monofilament testing noted, "total neuropathy of the second through fifth digits bilaterally." (Tr. 180). Perhaps most significantly, Dr. Akoto noted on June 25, 2003 that EMG "results showed sensory neuropathy consistent with uncontrolled diabetes...." (Tr. 258). Dr. Akoto later described this as "a fairly advanced sensory neuropathy." (Tr. 250).

Belaboring the point helps drive home its significance under the Regulations and case law:

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.... However, in all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding....

*Rogers*, 486 F.3d at 242 (citation omitted). The Commissioner's Rulings likewise explain the mandatory nature of the continued-weighing requirement, emphasizing:

15

>Adjudicators must remember that a finding that a treating source's medical opinion is not well-supported by medically acceptable clinical and laboratory techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. <u>Treating source opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927</u>. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

Social Security Ruling 96-2p, 1996 WL 374188 at *4 (July 2, 1996)(emphasis added).

The ALJ's errors when evaluating Dr. Akoto's opinions were not harmless due to the presence of supporting objective medical evidence and at least one consistent medical source opinion provided by Dr. Danopulos. A review, moreover, of these physicians' opinions does not reveal that their opinions are "so patently deficient that the Commissioner could not possibly credit" them. *Wilson*, 378 F.3d at 547. Consequently, the ALJ's errors were not harmless. *See Bowen*, 478 F.3d at 747-48; *Wilson*, 378 F.3d at 546-47.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source opinions are well taken. In light of the above review, and the resulting need for remand of this case, *see infra*, §VI, further analysis of Plaintiff's remaining contentions is unwarranted.

## VI. REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case

16

for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A conflict exists in the record between, on one side, the opinions of Plaintiff's treating physician Dr. Akoto and the one-time examiner Dr. Danopulos, and on the other side the opinions of two Ohio BDD physicians, Drs. Holbrook and McCloud. Given this evidentiary conflict, judicial award of benefits is unwarranted because the evidence of Plaintiff's disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration for further proceedings pursuant to Sentence Four of §405(g) due to the ALJ's failure to weigh the medical source opinions of record as required by the Regulations. On remand, the Commissioner and the ALJ should be directed to (1) re-evaluate the medical source opinions under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; (2) explain the evaluation of the medical sources as required by the Regulations, Rulings, and case law; and (3) determine anew whether Plaintiff is under a "disability."

Accordingly, the case must be remanded to the Commissioner and the ALJ under Sentence Four of 42 U.S.C. §405(g) for further proceedings consistent with this Report and Recommendations.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Byron Simon was under a "disability" within the meaning of the Social Security Act during the period of time at issue;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.

August 12, 2008

                                                                                                                          s/ Sharon L. Ovington  
                                                                                                                            Sharon L. Ovington  
                                                                                       United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).